IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA MEAD, | No. C 05-4793 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Victoria Mead filed this action seeking review of a decision to deny benefits by the Social Security Administration ("SSA"). The parties have filed cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court hereby DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

**BACKGROUND**

On July 25, 2002, plaintiff filed an application with the SSA for disability benefits, with an alleged disability onset date of August 1, 2000. Administrative Record ("AR") 55-57. Plaintiff alleged that she suffered from recurrent major depression. *Id*. at 69. The SSA denied plaintiff's application, *id*. at 39-42, and a request for reconsideration. *Id*. at 43-45.

Plaintiff then had a hearing before an Administrative Law Judge on February 11, 2005. *Id*. at 315-47. Plaintiff testified at the hearing, as did a medical expert and vocational expert. Plaintiff also submitted medical evidence in the form of reports, treatment notes, and medical records.

The ALJ issued a decision denying plaintiff's claim on May 12, 2005, finding that plaintiff was

not disabled as defined by the Social Security Act. AR 25-26.[1] In the decision, the ALJ reviewed plaintiff's testimony and the medical evidence in the record. The ALJ found that plaintiff's "testimony was not fully credible," and noted the following:

> . . . . Although the claimant was diagnosed with depression, she improved with her depression medication and was in compliance with her medication. She reported no side effects and through her own self-reports she stated that her Zoloft and Buspar was "working well together" without any side effects and that she was sleeping better. The undersigned notes that the claimant reported that she was not particularly interested in holding employment and that she had no difficulties paying her bills, shopping, and/or cleaning. Dr. Pope indicated that the claimant appeared somewhat anxious, but that she was oriented to time, person, place and situation, her memory was intact. During testing, the claimant had no difficulty with calculations, and had normal serial 7s; she also spoke spontaneously in a fairly well-organized fashion, and appeared to be functioning in the average range of intellectual ability.
>
> The undersigned also notes that during the claimant['s] psychiatric treatment with the Organe-Person County Mental Health Center the claimant improved significantly though she experienced some difficult stressors while receiving treatment. During her intake sessions, Dr. Fullwood noted that the claimant was well groomed, her thoughts were goal directed with no loss of associations, no flight of ideas, and no psychotic symptoms. She had good insight and judgment and her cognition was intact. He recommended that the claimant continue her medications. . . .
>
> The undersigned also notes that the claimant is also fairly active performing chores, taking care of her cats, reading, going to church, watching television, and volunteering at the homeless kitchen twice per month. The undersigned also gives great weight to Dr. Moore's testimony that although the claimant had some limitations of performing her activities of daily living, she could perform her personal needs when [re]quired as well as other needs, and was able to go out and get them, and therefore did not meet or equal any of the Listings of Impairments under the "B" criteria of 12.03 (schizoaffective disorders), 12.04 (dysthmia disorder), 12.08 (borderline personality disorder) or 12.09 (Marijuana abuse and dependence).

*Id.* at 22-23.

---

[1] The ALJ evaluates disability cases using a five-step evaluation process established by the Social Security Administration. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1520. In the first two steps, the claimant must establish that he or she is (1) not performing substantial gainful work and (2) not performing substantial gainful work due to a "severe" impairment. 20 C.F.R. § 404.1520. An impairment must have lasted or be expected to last twelve months in order to be considered severe. 20 C.F.R. § 404.1509. In the third step, the claimant must establish that his or her impairment meets or medically equals a listed impairment described the administrative regulations. 20 C.F.R. § 404.1520. If the claimant's impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step, in which the claimant must establish her impairment prevents her from performing relevant work she did in the past. 20 C.F.R. § 404.1520. In the fifth step, the Commissioner must demonstrate that the claimant is able to do other work, and that there are a significant number of jobs in the national economy that claimant can do. *Tackett*, 180 F.3d at 1099. The Commissioner may meet the burden of showing there is other work in significant numbers in the national economy that claimant can perform by relying upon "the testimony of a vocational expert." *Id.* The burden of proof is on the claimant as to the first four steps. *Tackett*, 180 F.3d at 1098. The burden shifts to the Commissioner for the fifth step. *Id.*

2

The ALJ concluded that "[i]nasmuch as the claimant has no significant physical problems, the undersigned finds the claimant retains the following residual functional capacity to an unhindered ability to lift, push, pull, and carry, and an unlimited ability to stand, walk, and sit. Moreover, since the record is consistent with the testimony of the medical expert, the undersigned further concludes that the claimant has the ability to do routine tasks in a non-production environment, with occasional contact with other workers." *Id*. at 23.  The ALJ found that plaintiff could not perform her past relevant work as a budget analyst and administrative assistant, but that she "could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy," such as office cleaner, mail clerk, or photocopy machine operator. *Id*. at 24-25.

Plaintiff unsuccessfully appealed the ALJ's decision with the Appeals Council of the Social Security Administration, *id*. at 5-7, and then filed the instant action.

**STANDARD OF REVIEW**

This action comes before the Court for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act.  The statute authorizes judicial review "after any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g).  The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Even if substantial evidence supports the ALJ's factual findings, the decision must be set aside if improper legal standards were applied in reaching that decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

**DISCUSSION**

**I.    Dr. Moore's testimony**

Plaintiff contends that the ALJ erred in determining plaintiff's residual functional capacity

3

1 ("RFC") as required for steps four and five of the administrative evaluation.[2] The ALJ partly based his
2 evaluation of plaintiff's medical condition on the testimony of Dr. Roger Moore, who testified as a
3 medical expert. Dr. Moore testified that while plaintiff's daily living activities were limited, plaintiff
4 could perform routine tasks in a "low social contact and non-production oriented" environment. AR
5 at 340. Dr. Moore testified, "[a] marked level of impairment would be where a person was able to not
6 keep up with the basic aspects of running a household, such as being able to pay the bills on an ongoing
7 basis, would not be able to take care of their daily needs in terms of being able to dress, shower, etc."
8 *Id*. at 341. Plaintiff's counsel , "[s]o that I understand what you're saying, . . . a marked level of
9 impairment would essentially be the inability to live independent?" *Id*. at 342. Dr. Moore responded
10 that "[i]f a person were unable to live independently that certainly would be at a marked level." *Id*.

11 Plaintiff argues that Dr. Moore used an incorrect definition of "marked" that violates the Social
12 Security regulations. Those regulations state, in relevant part,

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

16 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00(C). Plaintiff argues that Dr. Moore equated a "marked"
17 impairment with the inability to live independently, thereby requiring a more significant level of
18 impairment for "marked" than is required under the regulations.

19 The Court disagrees. Dr. Moore did not testify that he believed that a marked level of
20 impairment was *defined* as the inability to live independently. Instead, he stated that a person who could
21 not live independently *demonstrated* a marked level of impairment. Dr. Moore's testimony that a

---

[2] In the fourth step of the disability evaluation process, the claimant's RFC is determined. *See* 20 C.F.R. § 404.1520; *see also* 20 C.F.R. § 404.1545. The claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8p. An RFC "is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id*. (emphasis in original). A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. The RFC is assessed at each level of the administrative review process "based on all of the relevant evidence in the case record, including information about the individual's symptoms" and any "medical source statements." *Id*. Medical source statements are "opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." *Id*.

4

1 "marked level of impairment would be where a person was able to not keep up with the basic aspects
2 of running a household," is consistent with the statement in the Social Security Regulations that a
3 "marked limitation may arise . . . as long as the degree of limitation is such as to interfere seriously with
4 your ability to function independently, appropriately, effectively, and on a sustained basis."

## II.     Plaintiff's treating physicians

Plaintiff also contends that the ALJ ignored the following medical evidence from plaintiff's treating physicians: (1) Dr. Pope's assessment of plaintiff as having a "GAF" of 45-50[3]; (2) the fact that another treating physician gave plaintiff a GAF of 45[4]; and (3) Dr. Mayer's statement that she "supported" plaintiff's disability application.[5]

With respect to Dr. Pope's assessment, plaintiff is incorrect. The ALJ specifically discussed Dr. Pope's assessment in the decision, and the ALJ correctly noted that Dr. Pope reported that plaintiff had, at most, a moderate degree of limitation. *Id.* at 21, 187. While the ALJ did not discuss the report of the 2003 emergency room visit, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Moreover, as defendant correctly observes, the Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65

---

[3] Dr. Jane Pope observed plaintiff for the North Carolina Department of Health and Human Services and submitted a report dated October 28, 2002. AR 170-73. Dr. Pope assessed plaintiff as "around 45 to 50" on Axis V of the Diagnostic and Statistical Manual of Mental Disorders, which provides a global assessment of function ("GAF"). *Id.* at 172; *see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV"). A GAF in plaintiff's range indicates that a patient exhibits "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning." DSM-IV 32.

[4] Plaintiff does not indicate where in the record this assessment occurred. It appears that plaintiff may be referring to the emergency room physician's report from her February 25, 2003 treatment at the University of North Carolina's Neuropsychiatric Hospital. AR 256. The report indicated that plaintiff had discontinued her psychiatric medications quickly over a period of two weeks. *Id.* at 256-59.

[5] Dr. Elizabeth Mayer treated plaintiff for depression from 1995 to 1999. AR 126, 159. Dr. Mayer last saw plaintiff in person on June 14, 2000 and did not see plaintiff regularly as a patient after October 12, 1999. *Id.* at 126.

5

(Aug. 21, 2000) (commentary on final rules).

Finally, the Court finds no error in the ALJ's failure to accord any weight to Dr. Mayer's statement that she "supported" plaintiff's application for disability benefits. The statement at issue is a brief treatment note dated July 22, 2002 from Dr. Mayer, who had not seen plaintiff in person since June 14, 2000 and who had not treated plaintiff regularly as a patient since October 12, 1999. AR 126. The note describes a fifteen minute telephone call with plaintiff, and reads as follows: "[Plaintiff is] still not able to work. Sounded very depressed and tearful on phone. Wanted to talk with me about her [psychiatric] suggestion and consider disability application, which I supported. Does wish records to be released for this purpose." *Id.* Dr. Mayer's note regarding a patient she hadn't seen regularly for three previous years does not qualify as a medical opinion: there is no statement in that short note that reflects her judgment as to plaintiff's impairments or ability to work despite her impairments. *See* 20 C.F.R. § 404.1527(2) ("Medical opinions are statements from physician and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

### III.    Vocational Expert

#### A.    Hypothetical posed to vocational expert

Plaintiff also contends that the hypothetical upon which the vocational expert based her opinion did not include all of plaintiff's limitations. At the hearing, the ALJ asked the vocational expert the following:

> I want you to assume a hypothetical individual the same age, education and work background as that of the claimant. And I want you to also assume that, that individual has limitations that were just described by Dr. Moore. That the individual is limited to the performance of routine tasks, needs to avoid production work. And should also have a job where there's only occasional contact with others. With those limitations would there be any jobs you could suggest an individual could perform?

AR 344. The vocational expert responded that a person with those limitations could perform three jobs listed in the U.S. Department of Labor's Dictionary of Occupational Titles: office cleaner, mail clerk, and photocopy operator. AR 344. These jobs are designated as "unskilled," which the Social Security

6

regulations define as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

Plaintiff asserts that the ALJ's hypothetical was incomplete because it did not include the limitations contained in the report of Dr. Rapp, the state agency psychological consultant. AR 174-90 (Mental Residual Functional Capacity Assessment completed by Dr. Rapp). Dr. Rapp found that plaintiff was "not significantly limited" or "moderately limited"[6] in a number of different mental activities, and found, *inter alia*,

> Her concentration is impaired, but she seems quite capable of organizing her thoughts and conveying what she wants to say. Energy and persistence seem more problematic.
>
> The impression is that this claimant sees herself disabled from her prior work and work that is consistent with her high academic and intellectual ability. That may be true. One psychiatrist (CD) conveys that "she is not particularly interested in holding employment." Another psychiatrist conveyed that the claimant "should be able to do something." This reviewer holds the opinion that the claimant enjoys her role as it is now. The claimant provides no sense of working toward change. She'll change when her resources run out. Though this is a complicated case, the claimant appears capable of performing the following work related tasks.
>
> a) understand and remember details
>
> b) sustain concentration to perform a variety of tasks, some details at a non rapid to semi rapid pace
>
> c) relate appropriately (though superficially to supervisors and co-workers)
>
> d) adapt to routine changes associated with tasks that do not require her supervising others, performing complex tasks, or one where she is subject to public scrutiny due to the importance of her work.

*Id.* at 176.

When proposing a hypothetical, the ALJ "must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-1164 (9th Cir. 2001). If a hypothetical is incomplete, the opinion of the vocational expert "has no evidentiary value and cannot support the ALJ's decision." *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). However, in hypotheticals posed to a vocational expert, "the ALJ must only include those limitations supported by substantial evidence."

---

[6] The Court notes that plaintiff does not cite any authority for her assertion that "moderately limited" means a limitation for a certain portion of time, such as being impaired for one-third of the work day or work week.

7

*Robbins v. SSA*, 466 F.3d 880, 886 (9th Cir. 2006).  Conversely, "an ALJ is not free to disregard properly supported limitations." *Id*.

Here, the Court finds that the ALJ's hypothetical is supported by substantial evidence, and is also consistent with the limitations described by Dr. Rapp.  The ALJ described an individual who was "limited to the performance of routine tasks, needs to avoid production work [a]nd should also have a job where there's only occasional contact with others."  AR 344.  This language is consistent with Dr. Rapp's conclusions that plaintiff was capable of performing various work-related tasks, described *supra*. *Id.* at 176.

Furthermore, in posing his hypothetical to the vocational expert, the ALJ asked the vocational expert to consider the testimony of Dr. Moore.  *Id*. at 343-44.  The vocational expert was fully present for Dr. Moore's testimony.  *Id*. at 317. An ALJ may direct a vocational expert to "credit fully a specific portion of the record, which the [vocational expert] had just heard" when constructing a hypothetical. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  Dr. Moore testified in detail as to plaintiff's limitations, including information specific to plaintiff, such as her ability to take care of her daily personal needs.  *Id*. at 339-43.

**B.     Alleged inconsistency between plaintiff's RFC and jobs identified by vocational expert**

Plaintiff also argues that her RFC, as determined by the ALJ, is inconsistent with the level of mental functioning required for the three jobs identified by the vocational expert.  Plaintiff focuses on the specific vocational preparation ("SVP") and reasoning scores assigned to the three jobs.  The SVP of a listed job is defined as "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), Vol II at 1009.  All three jobs have SVP scores of two, which is defined as "[a]nything beyond short demonstration up to and including 1 month."  *Id*.

The jobs are also given "reasoning" scores: the cleaner position has a reasoning score of 1; the mail clerk job has a reasoning score of 3; and the photocopy operator has a reasoning score of 2.  *See*

*id*. Vol I at 248 (cleaner-housekeeping); 177 (photocopying-machine operator); and 181 (mail clerk). The reasoning scores are defined as follows:

    1      Apply commonsense understanding to carry out simply one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

    2      Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

    3      Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized instructions.

*Id*. Vol II at 1011.

The Court finds plaintiff's arguments lack merit. With respect to the SVP scores, there is nothing inconsistent with finding that plaintiff is limited to performing routine tasks and also finding that she could perform a job with the vocational preparation of "[a]nything beyond short demonstration up to and including 1 month." *Id*. at 1009. The Court further notes that an SVP score of 2 is very low on the range of 1 to 9, further undercutting plaintiff's suggestion that an SVP scores of 2 requires a high level of mental functioning.

With regard to the reasoning scores, the Court notes that one of the three jobs – cleaner - has the lowest reasoning score of 1, and plaintiff has not articulated any reason why a person limited to performing routine tasks could not work at reasoning level 1. Further, the Court finds that there is no inconsistency in finding that a person who "is limited to routine tasks, needs to avoid production work and . . . should have a job where there's only occasional contact with others" cannot perform jobs at reasoning level 2. As defendant notes, other courts have found that claimants who were limited to "simple, repetitive tasks" could perform jobs at reasoning level two. *See*, *e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (claimant who "retains the attention, concentration, persistence and pace levels required for simple and routine work tasks" could do level 2 work); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984-85 (C.D. Cal. 2005) (claimant who could perform "simple, routine, repetitive,

concrete, tangible tasks" could do level 2 work).[7]

### IV. Plaintiff's subjective complaints

Finally, plaintiff contends that the ALJ improperly rejected plaintiff's subjective claims regarding the extent of her medical impairment. As quoted *supra*, the ALJ did not find plaintiff's allegations regarding her limitations fully credible. AR 25.

If an ALJ determines a claimant's testimony as to the extent of her impairments is unreliable, the ALJ "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ must consider the record as a whole and may not isolate a "specific quantum" of evidence to support his conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). Furthermore, "[u]nless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). However, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record," the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. The ALJ may properly consider the daily activities of a claimant when evaluating her credibility if they provide contradictory evidence to her asserted limitations. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ is "responsible for determining credibility and resolving conflicts in medical testimony [and] is likewise responsible for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Here, the ALJ provided clear and convincing reasons as to why he found plaintiff's testimony "not fully credible." AR 22-25. The ALJ cited treatment notes from throughout the record indicating that plaintiff was responding well to treatment. *Id*. at 23. He considered her daily activities, including her volunteer work with a soup kitchen, her church activities, and her job applications. *Id*. at 22-23.

---

[7] Because the Court finds that there is no inconsistency between plaintiff's RFC, as determined by the ALJ, and the finding that she could work at jobs with reasoning levels 1 and 2, the Court does not address whether the record supports a finding that she could work at a level 3 job.

10

Plaintiff asserts that the ALJ penalized plaintiff for attempting to participate in life by considering plaintiff's daily activities, but it was not unreasonable for the ALJ to examine those activities in light of plaintiff's assertions. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1995) (where an ALJ considered a plaintiff's "daily activities, the notes of the treating therapist, and the evidence suggesting that he responded well to treatment for depression," even where "the findings upon which this determination was based were not as extensive as they might have been, they sufficed to show that the ALJ did not arbitrarily reject his testimony.").

Plaintiff also argues that the ALJ selectively evaluated plaintiff's treatment record at the Orange-Pearson County Mental Health Center because the ALJ only cited to six doctor's visits and "ignored" the rest of the record which supports her credibility. Plaintiff points to a letter from plaintiff's therapist at the clinic, Mr. David Donlon,[8] stating that he treated plaintiff 86 times and concurred that she had a major depressive disorder. AR 307-08. Plaintiff argues that these visits provided evidence to support plaintiff's credibility that the ALJ ignored.

However, the ALJ recognized that plaintiff had been diagnosed with depression. *Id*. at 22. The ALJ did not ignore that portion of the record. Rather, when evaluating plaintiff's credibility, the ALJ cited specific treatment notes indicating that plaintiff's depression was alleviated with medication and therapy. *Id*. at 22-23.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence, and accordingly DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion. (Docket Nos. 1 and 12).

**IT IS SO ORDERED.**

Dated: March 12, 2007

SUSAN ILLSTON
United States District Judge

---

[8] Plaintiff refers to her therapist as Mr. Donion in her brief, but the record indicates that the surname is Donlon. AR 306, 308.

11